STATE OF MISSOURI at the relation of NORVILLE W. BRICKEY, Relator, v. JULIUS R. NOLTE, Judge of the Circuit Court of Division No. I of St. Louis County, Missouri, and JOHN A. NOLAN, Referee, Respondents.—No. 38252.—169 S. W. (2d) 50.

Division One, March 2, 1943.

*Cullen Coil, Roland F. O'Bryen* and *Williams, Nelson & English* for relator.

*Thompson, Mitchell, Thompson & Young* and *R. Forder Buckley* for respondents.

844

DALTON, C.—This is an original proceeding instituted in this court by the filing of a petition for an alternative writ of prohibition. Relator, Norville W. Brickey, seeks to prohibit respondents, Hon. Julius R. Nolte, judge of the Circuit Court, Division No. I, of St. Louis County and John A. Nolan, Referee appointed by said circuit judge, from proceeding further in an equitable accounting in a cause entitled, School District of Festus, an Incorporated School District, plaintiff, v. Norville W. Brickey, defendant, pending in the circuit court of St. Louis County before said circuit judge. Upon the filing of the petition of relator, we issued a preliminary rule in prohibition and respondents have made return thereto setting out cause why our preliminary rule should not be made absolute.

Relator contends (1) that the circuit court did not have jurisdiction to order an equitable accounting because "the pleadings and evidence showed beyond question that plaintiff had an adequate remedy at law"; and (2) that the circuit court did not have jurisdiction to order an equitable accounting by N. W. Brickey, because "he was not properly before the court" and had not been properly summoned into court and made a party defendant.

The said cause, now pending in the circuit court of St. Louis County before respondent, Hon. Julius R. Nolte, and wherein respondent John A. Nolan was appointed referee, was instituted in the Circuit Court of Jefferson County on December 13, 1938. It was subsequently removed to St. Francois County and then to St. Louis County. The purpose of the suit, as disclosed by the petition, is (1) to secure an equitable accounting; (2) to impose, for the benefit of plaintiff, a constructive trust on all the property of defendant N. W. Brickey "into which the monies of the plaintiff can be traced"; (3) to enjoin and restrain said Brickey from conveying, transferring or disposing of any of his property; (4) to require a full and complete accounting to plaintiff of all things done by defendant as a member and president of the school board of plaintiff district since 1922; and (5) to require said defendant to pay over to said plaintiff all sums found to be due said plaintiff. No particular amount is claimed.

In said petition it is alleged that plaintiff is an incorporated school district organized and existing under the laws of the State of Missouri, and governed and controlled by a Board of Education, to wit, a board of six school directors as provided by law; that defendant N. W. Brickey is and has been a duly elected, qualified, and acting member of the board of directors of said school district and the president of such board; that he has been continuously re-elected to

and has held the respective positions since 1922; and that said school board of plaintiff school district was authorized to and did borrow money and issue notes and bonds and sell bonds to the general public.

The petition further alleged, "that the negotiation and execution of said loans, both to the banks and by bond issues as aforesaid, and the payment and retirement of said notes and bonds, were assumed and taken charge of by the defendant N. W. Brickey alone acting as President of the Board of the plaintiff, and plaintiff states that the members of the Board of the plaintiff and its officers had great trust and confidence in the ability of the defendant N. W. Brickey to negotiate and handle said loans. That from time to time, and in breach of said trust and confidence, and in violation of the defendant N. W. Brickey's duties and obligations as a member of and as President of the plaintiff's Board, the said defendant N. W. Brickey reported or represented to the Board of the plaintiff that a sum or sums of money were required to meet a loan of the plaintiff at a bank or on an outstanding bond issue, when in truth and in fact the amount due as aforesaid was a lesser amount than the sum or sums reported to the Board of the plaintiff by the defendant N. W. Brickey, and that the Board of the plaintiff, relying upon the defendant N. W. Brickey and his representations as to the amount then due, permitted the defendant to pay said sum or sums in discharge of the debt of the plaintiff then due, and that the said defendant, improperly, and in breach of his trust, withdrew from the funds of the plaintiff said sum or sums for the purpose of paying said debt, which sum or sums were in excess of the amount due by the plaintiff on said debt. That in other instances the defendant N. W. Brickey withdrew from the funds of the plaintiff for the purported purpose of paying a loan due by the plaintiff at a bank or on a bond issue, a sum or sums of money, without the knowledge of the Board of the plaintiff, when in truth and in fact said sum or sums were in excess of the amount actually due by the plaintiff, or when the plaintiff did not then have a loan or commitment on a loan coming due. That on other occasions the said defendant, without the authority and knowledge of the Board of Directors of the plaintiff, borrowed money at a bank in the name of the plaintiff School District, and purportedly in behalf of and for the benefit of the plaintiff School District, and did execute papers pursuant thereto in the name of the plaintiff School District, but the plaintiff states that it did not receive the proceeds of said loans, although the plaintiff ultimately paid said loans at the bank. That in other instances various school districts lying near the plaintiff School District paid a sum or sums of money to the defendant N. W. Brickey for the purpose of paying the tuition of children living in said paying school districts, so as to permit the attendance of said children in the schools operated by the plaintiff School District, and that although under the law said money properly belonged to the

plaintiff, and should have been turned over to the plaintiff by the said defendant, yet the said defendant failed so to do, and the plaintiff has never received the benefit of said tuition payments. That in other instances checks are known to have been drawn by other persons in favor of the plaintiff and endorsed by the defendant N. W. Brickey, without the plaintiff having received the proceeds of said checks. That in other instances when the plaintiff had paid the principal and interest due on bonds of the plaintiff at their maturity, the defendant N. W. Brickey used said bonds for his personal benefit, for which he should be held to account to the plaintiff for the use of said bonds, and furthermore, the said N. W. Brickey did in some instances cause the plaintiff to pay interest on said bonds after they had been retired, but the exact amount so improperly paid by the plaintiff as interest on the bonds theretofore retired is not known to the plaintiff.'' A specific instance is then given wherein defendant N. W. Brickey used for his own purposes at least $7000 out of $10,000 in refunding bonds being held by him for plaintiff and it is alleged that defendant caused the plaintiff to pay interest on bonds at a time when such payments should not have been made. It is further alleged that ''at all times herein mentioned the defendant N. W. Brickey, in his capacity as a Director and President of the Board of the plaintiff, occupied a fiduciary ▮▮▮ or trust relationship towards the plaintiff . . . That the plaintiff is not fully informed as to the exact amount which is now due and owing to the plaintiff from the defendant N. W. Brickey, and the plaintiff states that an ascertainment of the true state of the account between the plaintiff and the said defendant will necessarily involve the investigation of many transactions and circumstances of widely diverse character and with many different persons, and the plaintiff states that the state of the account between the plaintiff and the defendant N. W. Brickey is complicated, complex and diverse. Furthermore, certain of the plaintiff's records and books material to a proper accounting between the plaintiff and the defendant N. W. Brickey, have been mislaid, lost or destroyed, and the ascertainment of the true amount due from the defendant N. W. Brickey to the plaintiff has thereby been made more difficult.''

On the basis of facts alleged in its petition plaintiff charged that it had no adequate remedy at law.

On September 11, 1939, defendant N. W. Brickey answered said petition of plaintiff and charged a defect of parties defendant, in that the other members of the said school board were not made parties and that many acts charged against defendant were the acts of all members. The answer further contains general and specific denials and further pleads the three, five and ten year statutes of limitation, and certain other statutory provisions. On the same date defendant Brickey moved the court to transfer said cause to the law docket on the theory that the petition did not state ''a cause of action

of equitable cognizance and equitable accounting," but on its face showed that plaintiff had an adequate remedy at law. The motion was overruled. Thereafter plaintiff filed its reply in said cause denying the allegations of the answer and pleading concealment by defendant of the misconduct charged against him.

On July 14, 1941, and while said cause was pending and undisposed of, the defendant suffered disability by reason of being confined in the Missouri State Penitentiary under sentence for a two year term. Sec. 9225, R. S. 1939. On July 22, 1941, plaintiff petitioned the circuit court of Jefferson County, the county of defendant's last residence, for the appointment of a trustee to take charge of and manage the estate of defendant N. W. Brickey for the reason that he was so confined. Sec. 9229, R. S. 1939. On September 10, 1941, Belle B. Brickey was duly appointed Trustee of said estate of N. W. Brickey. She, thereafter, filed her consent to act as such trustee, qualified as such, and subsequently appeared in the circuit court of St. Louis County in the cause pending against N. W. Brickey. Sec. 9234, R. S. 1939. The records of the Circuit Court of St. Louis County show that she was duly summoned in said cause, and it was, thereafter, ordered "that this cause be, and the same is, hereby revived in the name of Belle B. Brickey, Trustee of the Estate of N. W. Brickey, as party defendant for and in the place of the said N. W. Brickey."

Thereafter, on March 17-19, inclusive, 1942, there was a hearing in said cause before the said circuit court of St. Louis County, before respondent Nolte, apparently upon the preliminary issue as to whether defendant should be compelled to account to plaintiff. See, Robert v. Davis, 235 Mo. App. 974, 142 S. W. (2d) 1111, 1116(4). Evidence was heard thereon and the cause taken under advisement. The evidence so heard is not before us. Plaintiff then filed a motion suggesting the release of N. W. Brickey from the Missouri State Penitentiary on April 25, 1942, alleging that "the suspension of civil rights of said N. W. Brickey was terminated with release," and praying that the cause be continued against N. W. Brickey.

On May 20, 1942, the said circuit court entered an interlocutory order in the cause, then styled "School District of Festus, an incorporated school district, plaintiff v. N. W. Brickey, defendant," as follows:

"This cause having been heretofore submitted to the Court upon the pleadings and evidence adduced by the parties, and the Court having heard and duly considered the same and being fully advised in the premises, and upon the suggestion of the discharge of N. W. Brickey from the Missouri State Penitentiary, the cause having heretofore been continued against the said N. W. Brickey, now upon full consideration, it is Ordered. Adjudged and Decreed, as follows:" Then follows the order, (1) that defendant, N. W. Brickey be and he is required to render a full and complete account to plaintiff of all things done by defendant relating to the receipt, disbursement, use

and disposition and appropriation ▉ of all sums of money, property, bonds, etc., of plaintiff, during the entire time defendant was president and a member of the board of plaintiff school district; (2) that the taking of the account will involve the trial of issues of fact requiring the examination of a long account, so that the appointment of a Referee is desirable, and (3) that John A. Nolan is appointed Referee to hear and decide the whole issue involved and report his finding to the court. Jurisdiction is retained to enter a final judgment for the definite amount found to be due and for such other purposes as may arise.

Relator in his petition for an alternative writ of prohibition, in addition to pleading the foregoing facts and attaching exhibits in support thereof, states that the petition filed by plaintiff in said cause did not state a cause of action in equity for accounting and that the petition and evidence "showed that there was no necessity for an equitable accounting and further showed that the plaintiff had already had an audit by an accounting firm of the City of St. Louis, namely Jeff K. Stone & Company, upon which they base their cause of action." No such audit is referred to in plaintiff's petition, or defendant's answer, and, as we have seen, the evidence is not before us.

Relator's petition further states: "that the order of the Court compels relator to render a full and complete accounting . . . ; that the respondents have no jurisdiction to order said equitable accounting because said petition does not state a cause of action in equity and should have been transferred to the law docket in said Court, and *that the petition on its face and the evidence adduced thereunder shows that plaintiff has an adequate remedy at law*; . . . that he (relator) has no adequate remedy at law or in equity other than this proceedings in prohibition, and that, unless this Court shall issue its writ of prohibition to prohibit the respondent Judge and Referee from enforcing said interlocutory decree and to prohibit said equitable accounting, *which said order for equitable accounting was made by said Judge in excess of his jurisdiction and without any jurisdiction to make under the pleadings filed before said Judge and the evidence adduced thereunder,* said relator will be irreparably injured." (Italics ours.)

The answer and return of respondents admits the proceedings had in the cause of School District of Festus v. N. W. Brickey, as hereinbefore set out, and expressly denies that the petition or the evidence before the court showed that there was no necessity for an equitable accounting; denies that the petition failed to state a cause of action in equity for an equitable accounting or that the cause should have been transferred to the law docket. In this connection respondents say that plaintiff's "petition clearly sets forth plaintiff's right to an equitable accounting under the laws of the State of Missouri in that it shows the need for a discovery, the existence of a

fiduciary or trust relationship and the complicated character of the accounts," and that "the equitable nature of the proceeding further appears from the necessity for the constructive trust and the injunction." Respondents in said answer admit plaintiff had an audit which "showed $47,000 of the plaintiff's funds which had been handled by N. W. Brickey were unaccounted for and could be traced only by a complete accounting from said N. W. Brickey," but deny that plaintiff's cause of action was based thereon.

Respondents further deny that relator has no adequate remedy other than this proceeding in prohibition; or that the interlocutory order for an equitable accounting was in excess of jurisdiction or without jurisdiction under the pleadings filed and evidence adduced thereunder. Respondents further plead facts upon which they base a plea of waiver of relator's right to apply for the writ by reason of participation in matters before the circuit court, and also other facts alleged to constitute laches and estoppel, and including facts alleged to have been shown in the hearing before the circuit court, but there is no proof in the record of most of these facts and they are denied by the reply of relator.

The reply of the relator further denies that N. W. Brickey has waived his rights to a writ of prohibition and further alleges that "he has not participated in any proceedings in this cause since said cause was revived against Belle Brickey, as Trustee of the Estate of Norville W. Brickey, and further states that on May 20, 1942, when one of the respondents, Judge Julius R. Nolte, attempted to continue the cause against the defendant, N. W. Brickey, that counsel for Belle Brickey, Trustee of the Estate of N. W. Brickey, specifically refused to continue in said cause or to enter ▓▓▓ any appearance in said cause." Relator attached to said reply a transcript of alleged proceedings in said circuit court wherein it was conceded that N. W. Brickey was in fact no longer confined in the Missouri State Penitentiary, but that N. W. Brickey and his attorney refused to appear in the cause after the order was entered requiring N. W. Brickey to account. It also appears that Belle B. Brickey, Trustee of the Estate of N. W. Brickey, appeared specially to contend that the order of the court, purporting to substitute Belle B. Brickey, Trustee, in place of N. W. Brickey, had in fact released N. W. Brickey as defendant in the cause. Counsel, referring to said order, stated: "That takes him entirely out of the case; she comes into the case as trustee; and the only way they could go on now is to get an alias summons to summons him (N. W. Brickey) into the lawsuit." According to the exhibit, respondent Nolte thereupon sustained plaintiff's motion that the cause be continued against N. W. Brickey in place and instead of Belle B. Brickey, Trustee of N. W. Brickey.

▓▓▓ Relator insists that "the real basis of equity jurisdiction in accounting suits is the inadequacy of a legal remedy" and that "plaintiff must prove that it has no adequate remedy at law." Relator says,

(1) that "plaintiff's petition and proof . . . proved affirmatively that plaintiff had an entirely adequate remedy at law" and (2) that the auditor for Jeff K. Stone and Company "was on the stand during the trial of the case and testified as to the amount that was missing." These statements are denied by respondents. Relator's petition does not set forth the "proof," alleged to have been shown to the circuit court which relator claims "showed that there was no necessity for an equitable accounting." Respondents, on the other hand, by answer alleged certain facts, which it is contended "showed that the School District had no adequate remedy at law and no remedy at all except the remedy ordered by respondents." The reply of relator denies, in effect, that these alleged facts were shown to the circuit court. In any case the evidence before the circuit court is not before us. Accordingly, we consider only the plaintiff's petition. Did it allege facts sufficient to show "a cause of action of equitable cognizance and equitable accounting" and show that plaintiff had no adequate remedy at law? Were the facts stated in plaintiff's petition sufficient to invoke the jurisdiction of a court of equity and give the circuit court jurisdiction to order an equitable accounting?

In the case of Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606, 609, this court said: "The best considered authorities put equitable jurisdiction for an accounting upon three grounds, to wit: The need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation. The relief which is given in this action is an accounting and a judgment for the balance found due on taking the account. 1 C. J., 613, sec. 56. The basis of equity jurisdiction in accounting is the inadequacy of a legal remedy. 1 C. J. 615, sec. 58; Johnston v. Star Bucket Pump Co., 274 Mo. 414, 202 S. W. 1143; Ray v. Bayer Steam Soot Blower Co. (Mo. App.), 282 S. W. 176; Palmer v. Marshall (Mo. App.), 24 S. W. (2d) 229. It is a remedy particularly applicable to mutual and complicated accounts. 1 C. J. 618. sec. 63. And cases where a confidential or fiduciary relationship exists. 1 C. J. 621, sec. 68." See, also, State ex rel. Cockrum v. Southern, 229 Mo. App. 749. 83 S. W. (2d) 162, 164; Johnston v. McCluney (Mo. App.), 80 S. W. (2d) 898, 902; 1 C. J. S. 645. sec. 14; 1 Am. Jur. 298, sec. 52.

Plaintiff's petition alleged that defendant N. W. Brickey had been the president and a member of the Board of Directors of plaintiff school district continuously since 1922; that he occupied a fiduciary or trust relationship toward the plaintiff; and that by reason of such position he had assumed and taken charge of the negotiations and execution of loans, both to banks and by bond issues and also concerning the retirement of said notes and bonds. The petition further charges a breach of trust and confidence and a violation of the duties and obligations of defendant, as president and a member of the School Board, to plaintiff.

The plaintiff school district was a public corporation. City of Edina v. School District of Edina, 305 Mo. 452, 461, 267 S. W. 112, 115; State ex inf. McKittrick v. Whittle, 333 Mo. 705, 709, 63 S. W. (2d) 100. Defendant N. W. Brickey, as an officer and member of the school board of plaintiff school district, occupied a fiduciary relationship to the plaintiff. Consolidated School Dist. No. 6 of Jackson County v. Shawhan (Mo. App.), 273 S. W. 182, 184; ■ Bent v. Priest, 86 Mo. 475, 482; Ward v. Davidson, 89 Mo. 445, 458, 1 S. W. 846, 850; Bromschwig v. Carthage Marble & White Lime Company, 334 Mo. 319, 324, 66 S. W. (2d) 889, 892; Keokuk Northern Line Packet Company v. Davidson, 95 Mo. 467, 473, 8 S. W. 545; Yellow Mfg. Acceptance Corp. v. American Taxicabs, 344 Mo. 1200, 1207, 130 S. W. (2d) 601, 603. We think the petition stated sufficient facts to show the existence of a fiduciary relationship between plaintiff and defendant. "Courts of equity have refused to set any bounds to the circumstances out of which a fiduciary relationship may spring," and the existence of a fiduciary relationship is a question of fact. Liddell v. Lee (Mo.), 159 S. W. (2d) 769, 772; Shaw v. Butler (Mo. Sup.), 78 S. W. (2d) 420, 429.

It is unnecessary to review other facts stated in plaintiff's petition, but we think it clearly appears that plaintiff did not know the amount due and owing from defendant Brickey. It further appears that the ascertainment of the amount due will involve the investigation of many transactions, including receipts and expenditures and transactions of diverse character with many different persons. Upon the "pleadings and evidence adduced by the parties" the circuit court found that "the taking and stating of said account will necessarily involve the trial of issues of fact requiring the examination of a long account between the parties."

Relator in support of the position that plaintiff had an adequate remedy at law relies particularly upon Palmer v. Marshall (Mo. App.), 24 S. W. (2d) 229, 233; Bennett v. Crane, 220 Mo. App. 607, 289 S. W. 26, 27; Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606, 609; and Robert v. Davis, 235 Mo. App. 974, 142 S. W. (2d) 1111, 1115. After a careful consideration of these cases, we have reached the conclusion that plaintiff's petition does not show that plaintiff had an adequate remedy at law, as contended by relator. We hold that the record before us wholly fails to show that the circuit court was without jurisdiction to order an equitable accounting "under the pleadings filed before said Judge and the evidence adduced thereunder."

■ We now consider the second issue presented. Did the circuit court have jurisdiction of the person of Norville W. Brickey? Relator insists that the order of court purporting to revive the cause "in the name of Belle B. Brickey, Trustee of the Estate of N. W. Brickey, as party defendant for and in place of the said N. W. Brickey" was, in force and effect, a total dismissal of the cause as to N. W. Brickey

854

and totally released him from said action, so that, upon the removal of his disability by his release from imprisonment a further service of summons or voluntary appearance was required to bring him before the court. There is no suggestion, however, that plaintiff ever dismissed the cause against N. W. Brickey at any time, either before or after Belle B. Brickey, Trustee, was summoned and appeared, and, so far as appears from the record here, no amended pleadings were filed. Was service of process on defendant Brickey after his release from imprisonment required to give the court jurisdiction? Did the pending cause abate upon his release from such imprisonment? Was revivor necessary? Did the court's order involve a substitution of parties defendant? No authorities directly in point on the issues for decision are cited by the parties and we have found none.

Section 1042, R. S. 1939, provides that, "in case of the death, marriage or other disability of a party, the court, on or before the third term after the suggestion of such death, marriage or disability, may, on motion, order the action to be continued by or against the representative or successor of such party in interest." Succeeding sections provide how such representative or successor in interest may be brought into the case. Sec. 1046 provides that, "in all cases where a representative or successor is made a party to an action as herein provided, the pleadings of the party whom he represents or succeeds shall be taken to be his, which he may be allowed to amend; and proceedings may be had in all respects in favor of or against him, as if he had been an original party to an action."

Defendant Brickey, after he had been served with process and had appeared in the case, suffered disability, to wit, a suspension of his civil rights by imprisonment for a term less than his natural life. A trustee had been appointed, had qualified and had been brought into the case, as provided by statute. The trustee was defending the suit originally pending against the convict. Brickey was still an interested party in the cause, but he could not appear ▮ or defend the same. Thereafter, Brickey was released from imprisonment and his disability removed.

The statutes with reference to abatement and revival do not apply because neither the original defendant, nor the trustee defending the cause and protecting the rights of the convict, have suffered disability. Instead the original defendant, whose interest the trustee was defending, is no longer under disability. Access to the courts is no longer denied to such defendant. The question is whether, on notice (but without further summons), the cause may be continued against such defendant and without the further intervention of the trustee.

We think the relator misconstrues the force and effect of the circuit court's order of March 7, 1942. This order was entered after the appointment of Belle B. Brickey, Trustee of the Estate of N. W. Brickey, and after she had been duly summoned to appear and show

cause "why this cause should not be revived in the name of Belle B. Brickey, Trustee of the Estate of N. W. Brickey." While the order as entered "decreed that this cause be, and the same is, hereby revived in the name of Belle B. Brickey, Trustee of the Estate of N. W. Brickey, as party defendant for and in place of the said N. W. Brickey," the same applied, we think, only to the active management and control of the defense in the cause. N. W. Brickey was not discharged or released as a defendant from the cause in which he had been duly summoned and had appeared. Although all of the civil rights of N. W. Brickey were temporarily suspended during the period of his imprisonment (Sec. 9225, R. S. 1939), yet he remained under the protection of the law. Sec. 9226, R. S. 1939. He was under disability, and could not appear in court or defend the pending suit, but the plaintiff could not proceed therewith, until a trustee was appointed to take charge of and manage the estate of defendant, and until the trustee voluntarily appeared or was brought into the suit to defend the same. Murphy v. Barron, 275 Mo. 282, 205 S. W. 49, 51; Wamsley v. Snow, 331 Mo. 261, 53 S. W. (2d) 258; Sec. 9229, R. S. 1939. By Sec. 9234, R. S. 1939, such trustee was authorized to defend all actions commenced against such convict. When such trustee was brought in as a party to the proceedings, to defend the cause pending against defendant N. W. Brickey, it became and was the duty of the trustee to protect the property rights of the defendant N. W. Brickey under the supervision of the court. McLaughlin v. McLaughlin, 228 Mo. 635, 653, 129 S. W. 21.

In the case of McLaughlin v. McLaughlin, supra (228 Mo. 635, 647), this court said: "The only way a defense could be properly made would be through the trustee provided for by the terms of article 2 of chapter 141 (R. S. 1899). Under these statutes, the trustee under the direction of the court appointing him could see that the suit was properly defended. When all of our statutory provisions are taken and considered as a whole, as must be done, we are of opinion that they contemplate that, when the estate of a convict is being attacked by a suit, such convict should be in court through his trustee before a valid judgment could be entered touching his property."

There was no substitution of parties defendant in this case, since the trustee was brought in to defend a cause pending against a convict. See, Graden v. Patrick (Mo. App.), 162 S. W. (2d) 287, 289; Burger v. Boardman, 254 Mo. 238, 256, 162 S. W. 197; Renfro v. Metropolitan Life Ins. Company, 148 Mo. App. 258, 271, 129 S. W. 444; Redmond v. Q., O. & K. C. R. R. Company, 225 Mo. 721, 728, 126 S. W. 159; Neale v. Utz, 1 Matthews (Va.) 480; Cobb v. Garlington (S. C. Sup. Ct.), 84 S. E. 302. In the Redmond case, supra, a plaintiff became insane after the institution of a suit in his name. Thereafter, the Probate Court appointed a guardian who appeared and was made a party plaintiff and continued the prosecution of the cause in the name of the original plaintiff by guardian. Defendant

objected to having the cause revived in the name of the alleged guardian, for the reason that defendant was not in court for that purpose, since no scire facias had been issued against it. On appeal it was held that there had been no substitution of parties plaintiff, no abatement and no revivor, and that scire facias to defendant was unnecessary.

Belle B. Brickey, trustee, was brought into the cause which was pending against N. W. Brickey. She was in effect an officer of the court authorized to protect and defend the property rights of the defendant during the period that access to the courts was denied to him by statute. See, Mo. Pac. Ry. Company v. Moffatt, 60 Kan. 113, 55 Pac. 837, 838; 31 C. J. 1156, Sec. 329½; Secs. 9232, 9234, R. S. 1939.

But relator in effect contends that the statutory trustee did not represent defendant Brickey, but such trustee, as owner of Brickey's property. While Sec. 9233, R. S. 1939, provides that "upon taking the oath and filing the bond required . . . all the estate, property, rights in action and effects of such imprisoned convict shall be vested in such trustee, in trust for the benefit of creditors and others interested therein," there might be some . question that this section applies where a convict is imprisoned for a term less than life, particularly in view of Sec. 9229, R. S. 1939, which provides that "whenever any person shall be imprisoned in the penitentiary for a term less than his natural life, a trustee, to *take charge of and manage his estate,* may be appointed by the circuit court . . . " Since N. W. Brickey was only sentenced for a two year term, he was not civilly dead, but all civil rights were suspended. Sec. 9225, R. S. 1939. Section 9250 provides that upon discharge from imprisonment the released convict shall be entitled to all of his property remaining in the hands of the trustee, subject to expenses incurred and commissions. It will further be noted that, if Sec. 9225 applies in a case where civil rights are merely suspended, there is no provision for revesting title in the convict upon his discharge from imprisonment for a term. We think that Sec. 9229, R. S. 1939, more nearly corresponds with Sec. 394, R. S. 1939, with reference to the power of curators, which provides that "the curator shall have the care and management of the estate of the minor, subject to the superintending control of the court." Sec. 395, R. S. 1939, also, provides that. such curators shall represent their wards in all legal proceedings and shall prosecute and defend for such wards. Compare, Sec. 9234, R. S. 1939. In any case, Brickey was a beneficiary and, if title to. his property was in the trustee, "in trust," N. W. Brickey was a beneficiary and interested therein.

We hold that the circuit court did not lose jurisdiction of the person of defendant N. W. Brickey and that, when N. W. Brickey was released from imprisonment, it devolved upon him to protect his rights in the cause (wherein he had been duly summoned and had appeared)

or suffer the consequences. The cause was still pending against him when his civil rights were restored and the courts were again open to him without the intervention of a trustee. Ward v. Morton, 294 Mo. 408, 242 S. W. 966; Cole v. American Ry. Express Company, 228 Mo. App. 78, 68 S. W. (2d) 736, 740. There was no abatement, and no revivor was necessary upon the restoration of defendant's civil rights. Missouri Pac. Ry. Co. v. Moffatt, supra, (55 Pac. 837, 838).

In Missouri Pac. Ry. Company v. Moffatt, supra, (55 Pac. 837, 838), an infant plaintiff, who became of age, was permitted to continue the cause for himself and as next friend for other minor plaintiffs after a former next friend had died. It was contended that the action had abated and had not been revived. The court said: ''While the action of an infant under the statute may be brought by his guardian or next friend, the infant is the real party of the proceeding. The infants were parties to the proceeding from its inception, and their rights which were involved in the action belonged to themselves. The next friend had no title to or right in the subject-matter of the action, but was merely brought into court to protect the rights of the infant. The court in which the proceeding is pending guards the interests of the minors, and in the exercise of its power may, when it becomes necessary, remove one next friend and appoint another. It is also true that, when the infant arrives at majority during the pendency of the suit, that fact may be entered upon the record, and he may thenceforward proceed in the suit alone. No formal proceedings to revive are necessary, as the next friend is neither technically nor substantially a party to the action, but only appears as an agency of the court to guard and protect the interests of the minors, who are the real parties to the proceeding. The statute with reference to the revivor of proceedings has no application to cases where there is a change of next friend, and hence there was no abatement of the action.'' See, also, Deering v. Hurt (Texas), 2 S. W. 42.

In the case of New v. Smith, 86 Kan. 1, 119 Pac. 380, 382, it was held that, where the trustee for the estate of a convict had ▮▮ commenced an action for the benefit of the convict, and the convict was thereafter pardoned, the released convict could be substituted as plaintiff, with the consent of the trustee, and continue the action without abatement or revivor, and that defendant had no interest in the matter.

Under the admitted facts in this case, no further service of summons on defendant Brickey was required, because the circuit court still had jurisdiction of the person of defendant and, upon the restoration of defendant's civil rights, could continue the cause against him and order him to account in said proceedings.

We are not concerned here with the mere question of notice and an opportunity to be heard on the motion alleging release from imprisonment and asking that the cause be continued against N. W.

Brickey, and respondents allege that such notice was given to the attorneys for N. W. Brickey.

In view of the conclusions we have reached, supra, the preliminary rule in prohibition heretofore issued is discharged and peremptory writ denied. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.